# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

**JANETTE ROJAS**

                Plaintiff,

        v.                                          Case No. 2:25-CV-627

**ADVOCATE AURORA HEALTH, INC.**

                Defendant.

## COMPLAINT

### PRELIMINARY STATEMENT

1. This action is brought pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("the FMLA"). The Defendant, Advocate Aurora Health, Inc. ("Aurora"), interfered with Plaintiff, Janette Rojas' ("Ms. Rojas") FMLA rights when it discouraged her from exercising her FMLA rights, terminated her employment and denied her use of FMLA leave for her mother's serious medical condition. 29 U.S.C. § 2615(a)(1). Aurora also retaliated against Ms. Rojas when it terminated her employment after she exercised rights afforded by the FMLA. 29 U.S.C. § 2615(a)(2).

### JURISDICTION AND VENUE

2. This court has jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a). The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, in that during all times material hereto, Aurora maintained business offices, and engaged in a business affecting commerce, within the Eastern District of Wisconsin.

## TRIAL BY JURY IS DEMANDED

3. Ms. Rojas demands that her claims be tried to a jury of her peers.

## PARTIES

4. Ms. Rojas is an adult female and currently resides at 1125 S. 72nd Street, West Allis, WI 53214. Ms. Rojas was an employee of Aurora as that term is defined pursuant to 29 U.S.C. § 2611(2).

5. Aurora is a corporation that provides health care services and has an office, among other locations, at 750 W Virginia Street, Milwaukee, WI 53204.

6. At all times relevant hereto, Aurora was and is an employer engaged in an industry affecting commerce and had 50 or more employees for each working day in each of twenty or more calendar weeks. At all relevant times herein, Aurora has been a covered entity under the FMLA pursuant to 29 U.S.C. § 2601, *et seq.*

## OPERATIVE FACTS

7. On or about August 23, 2010, Aurora (formerly Lakeshore Medical Clinic) hired Ms. Rojas as full time "Medical Assistant." [*See* Exhibit A].

8. During her employment, Ms. Rojas was consistently the subject of positive performance feedback relating to, among other things, her quality of work, communication, teamwork, attendance and overall performance.

9. For example, in Ms. Rojas' 2012 annual performance review, her former supervisor commented, "exceptional MA [medical assistant], very dedicated to her job and patients goes beyond limits." [*See* Exhibit B].

10. In Ms. Rojas' 2013 annual performance review, there was similar commentary such as "knows all her duties," "she did very well with EPIC transition," "goes beyond her job to excellent levels," and "loved by all patients." [*See* Exhibit C].

11. For 2014, her former supervisor commented, "No issues and no complaints from patients," "No call ins this year! Good job Janette!" and "Has grown in her leadership qualities therefore earned the respect of coworkers." [*See* Exhibit D].

12. For 2015, Ms. Rojas' former supervisor issued her an overall rating of "Exceptional Year / Accomplished." [*See* Exhibit E].

13. For 2016, Ms. Rojas' former supervisor recognized her with ratings of "Exceeded Expectations" and "Accomplished" along with positive commentary consistent with prior years. [*See* Exhibit F].

14. For 2017, Ms. Rojas continued to meet work expectations which was reflected in her annual evaluation along with positive commentary such as "This example of communication is something [that] sets Janette apart from some of her peers in their current practice," "Janette's flexibility is appreciated in helping out her peers," "She has clinic responsibilities 4 days a week and 1 day a week spends the time helping her team with phone calls, scheduling patients for tests and procedures as well as helping out in other practices outside her own." [*See* Exhibit G].

15. For 2018, Ms. Rojas' supervisor continued to rate her as meeting expectations along with positive commentary relating to her passion for her team and patients, her abilities in "upholding Aurora service behaviors" and all she did for her clinic. [*See* Exhibit H].

3

16. However, after Ms. Rojas began more consistently exercising her right to medical leave relating to her parents' medical conditions, Aurora and/or Ms. Rojas' supervisor(s) began referring to her need for leave in negative terms including within her annual performance evaluation.

17. For example, from time to time between approximately 2019 and 2023, Aurora approved Ms. Rojas' requests for medical leave as it related to the serious medical conditions of her parents which, on occasion, occurred unexpectedly and/or without warning.

18. Thereafter, certain of Ms. Rojas' immediate supervisors began interfering with her medical leave rights and otherwise retaliated against her for exercising the same.

19. For example, in connection with Ms. Rojas' 2019 annual performance evaluation, while confirming that Ms. Rojas was an "asset" to the team, her immediate supervisor issued to her a negative overall rating of "Partially Meets Expectations" along with negative commentary related to Ms. Rojas' need for medical leave such as, "In 2019 Janette had 6+ unscheduled days off. This leaves the department short and can compromise patient care." [*See* Exhibit I].

20. From 2020 to 2021, Ms. Rojas reported to new supervisors who resumed issuing to Ms. Rojas positive performance evaluations of at least "Meets Expectations." [*See* Exhibits J & K].

21. In or around January 2023, Jennifer Saldana ("Ms. Saldana") became Ms. Rojas' new immediate supervisor. Thereafter, Ms. Saldana began interfering with Ms. Rojas' medical leave rights and retaliated against her for exercising the same.

4

22. For example, between January 2023 and May 19, 2023, among other protected activities, Ms. Rojas exercised her right to medical leave as it related to her mother's serious medical condition(s).

23. On or about May 1, 2023, Ms. Saldana issued to Ms. Rojas an annual performance evaluation for 2022 with negative commentary relating to Ms. Rojas' exercise of her medical leave rights where Ms. Saldana wrote, "Attendance was an issue in 2022, please work on improving attendance in 2023." [*See* Exhibit L].

24. On or about May 2, 2023, Ms. Saldana made comments in the workplace indicating her intent to terminate Ms. Rojas and/or other employees who exercised their medical leave rights.

25. Thereafter, on multiple occasions, Ms. Saldana repeatedly interrogated Ms. Rojas regarding her attendance and/or location in the workplace, while not interrogating similarly situated employees who did not exercise their rights to medical leave.

26. For example, following Ms. Rojas' shift on May 4, 2023, Ms. Saldana accused Ms. Rojas of not being in the workplace after a certain time because Ms. Rojas' work activities were not documented in certain of Aurora's computer systems such as Epic.

27. However, as documented in Ms. Rojas' 2017 annual performance evaluation, her duties included spending "time helping her team with phone calls, scheduling patients for tests and procedures as well as helping out in other practices outside her own" which would not always be documented in Aurora's computer systems such as Epic. [*See* Exhibit G].

5

28. Ms. Rojas denied the accusation, confirmed her attendance on May 4, 2023, provided details regarding the work she performed and referred Ms. Saldana to witnesses who had firsthand knowledge of Ms. Rojas' presence in the workplace.

29. On or about May 8, 2023, Ms. Saldana questioned Ms. Rojas asking why she was not at Aurora's 4131 W Loomis Road location.

30. In response, Ms. Rojas confirmed that she was working at Aurora's 4448 W Loomis Road location, consistent with Aurora's work schedule.

31. On or about the next day, May 9, 2023, Ms. Saldana again questioned Ms. Rojas about her location in the workplace.

32. In response, Ms. Rojas confirmed that she was working at St. Lukes Hospital, consistent with Aurora's work schedule.

33. On or about May 10, 2023, Ms. Saldana again accused Ms. Rojas of not being on site and/or being at the incorrect location.

34. Once again, Ms. Rojas confirmed that she was where she was supposed to be consistent with Aurora's work schedule and invited Ms. Saldana to reach out to witnesses to confirm the same.

35. On about May 16, 2023, Ms. Saldana again accused Ms. Rojas of not being in the correct location.

36. In response, among other things, Ms. Rojas confirmed her work location was consistent with Aurora's work schedule.

37. In addition to the above, among other things, Ms. Rojas expressed her opposition to Ms. Saldana's interference and/or retaliation with her medical leave rights and informed Ms. Saldana that she would be reporting her to human resources.

38. On May 16, 2023, before Ms. Rojas was able to report Ms. Saldana to human resources, she informed Aurora management of her need to take emergency medical leave relating to her mother's serious medical condition(s).

39. Aurora management approved her request for medical leave from May 16, 2023 through May 19, 2023.

40. On May 19, 2023, while Ms. Rojas was on medical leave in connection with her mother's serious medical condition(s), Ms. Saldana engaged in additional acts of interference and retaliation by terminating Ms. Rojas via a phone call.

41. The same day, Ms. Rojas' mother passed away in connection with her serious medical condition(s).

## FIRST CLAIM FOR RELIEF
## INTERFERENCE WITH FMLA LEAVE ENTITLEMENT

42. As for her claim for relief, Ms. Rojas re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

43. The allegations more particularly described above constitute interference with Ms. Rojas' use of the FMLA. Aurora management repeatedly engaged in conduct meant to interfere with and/or deter Ms. Rojas from exercising her right to FMLA for her mother's serious medical conditions where, among other things, her most recent immediate supervisor verbally stated her intention to terminate employees entitled to medical leave, repeatedly harassed Ms. Rojas regarding her work location while not harassing similarly situated employees regarding their work location and terminated Ms. Rojas while she was on protected medical leave after Ms. Rojas threatened to report her for violating her medical leave rights.

7

## SECOND CLAIM FOR RELIEF
## RETALIATION FOR EXERCISING FMLA RIGHTS

44. As for her claim for relief, Ms. Rojas re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

45. The allegations more particularly described above, constitute retaliation by Aurora against Ms. Rojas for exercising her rights afforded by the FMLA. Ms. Rojas exercised her rights to FMLA and expressed her opposition to the discriminatory treatment she faced in connection with the exercise of her rights. In response, Aurora management repeatedly treated her less favorably than similarly situated employees who did not exercise their FMLA rights and terminated Ms. Rojas' employment because Ms. Rojas exercised her FMLA rights and expressed her opposition to discriminatory treatment relating to the exercise of her FMLA rights.

**WHEREFORE,** Plaintiff, Janette Rojas, demands relief as follows:

   A. Judgment declaring that the actions of the Defendant described herein have violated the Plaintiff's FMLA rights;

   B. Judgment ordering the Defendant to restore the Plaintiff to her former position with the Defendant, former rate of pay, and benefits, pursuant to 29 U.S.C. § 2617(a)(1)(A);

   C. Judgment against the Defendant, awarding damages for all wages, employment benefits and other compensation lost by reason of the FMLA violation;

D. Judgment against the Defendant awarding the Plaintiff liquidated damages equal to the sum of the amount described in Paragraph (C) above, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

E. Judgment against the Defendant, awarding the Plaintiff her costs, disbursements, prejudgment interest, and actual attorney's fees incurred in prosecuting this claim, together with interest on her costs and attorney's fees; and

F. Such other relief as the Court deems just and equitable.

Dated this 30th Day of April 2025.

        s/*John P. Kreuser*
        John P. Kreuser
        State Bar No. 1097962
        HYNES & KREUSER, S.C.
        740 Pilgrim Parkway, Ste. 300
        Elm Grove, WI 53122
        Phone: (262) 505-5678
        Fax: (262) 788-5317
        Email: jkreuser@hyneslawfirm.com